**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CRESCENT RECOVERY, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ACCOUNT PORTFOLIO MANAGEMENT, LLC, et al.,**<br><br>**Defendants.** | **Civil Action No. 07-4857 (JAP)**<br><br>**REPORT AND RECOMMENDATION** |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon the Motion of Plaintiff Crescent Recovery, LLC ("Crescent") for an Order compelling Defendant Account Portfolio Management, LLC ("APM") to adhere to the terms of the parties' settlement agreement. The Court has fully reviewed and considered all of the papers submitted in support of and in opposition to Crescent's motion, including the parties' supplemental briefing regarding the Court's jurisdiction to hear this matter. The Court has also considered counsel's argument as presented during the September 17, 2009 hearing. For the reasons set forth more fully below, the Court recommends that Crescent's motion be DENIED.

## I. Background

The facts of this case are well known to all parties and the Court. As a result, only those relevant to the instant motion are set forth herein. On October 9, 2007, Crescent brought suit against APM, vCollect Global Inc. and Lawrence Hecker. Crescent's claims against APM stemmed from the following three contracts, which Crescent claimed APM breached: (1) the September 15, 2006 Asset Sale Agreement; (2) the September 15, 2006 contingency debt

collections agreement; and (3) the January 19, 2007 joint venture and contingency debt collections agreement.

Ultimately, Crescent and APM (collectively, the "parties") reached a settlement in this matter, which they memorialized in their written settlement agreement dated July 30, 2008 (the "Settlement Agreement"). The parties informed the Court of their settlement during a telephone conference that was held on August 11, 2008. The District Court then entered an Order of Dismissal on August 14, 2008. The terms of that Order are as follows:

> (1) This action is hereby DISMISSED without costs and without prejudice to the right, upon motion and good cause shown within 60 days, to reopen this action if the settlement is not consummated; and
>
> (2) If any party shall move to set aside this Oder of Dismissal as provided in the above paragraph or pursuant to the provisions of Fed. R. Civ. P. 60 (b), in deciding such motion the Court retains jurisdiction of the matter to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties, **cross claimants, counter claimants, third-party plaintiffs/defendants and any pending motions are dismissed as moot.**

(8/14/08 Order of Dismissal (emphasis in original)). At no time within the 60-day period outlined in the District Court's Order of Dismissal did the Court receive any intervening correspondence from either party indicating that issues had arisen with respect to the settlement of this matter. However, on November 3, 2008, Crescent filed a motion to compel adherence to the Settlement Agreement.

In its motion, Crescent argues that despite several requests, APM has failed to comply with the terms of the Settlement Agreement. Specifically, Crescent argues that APM has not complied with ¶¶ C, D, E and F of the Settlement Agreement. These paragraphs read as follows:

> C. Accounts. It is expressly understood by the parties that all accounts described by the Contracts dated August 24, 2006, September 15, 2006 and January 19, 2007, belong to, are titled in, and owned by CR. APM relinquishes any interest whatsoever in these accounts along with any outstanding payments due on these accounts. It is further understood that the Contracts dated August 24, 2006, September 15, 2006 and January 19, 2007, are terminated with no further obligations owed by the Parties to each other, except for the obligations set forth in this Agreement.
>
> D. Accounting. APM agrees to immediately provide to CR a full and complete updated accounting up to June 30, 2008 from all of the accounts referenced in the Contracts dated August 24, 2006, September 15, 2006 and January 19, 2007. The accounting shall include a schedule of payments received by APM since the previous accounting. These payments shall be immediately turned over to CR and sent with the accounting. In addition, any future payments received by APM shall be sent to CR within seven (7) days of receipt.
>
> E. Status Report. APM shall provide a Status Report showing the status of all accounts from the Contracts dated August 24, 2006, September 15, 2006 and January 19, 2007 prior to the date they were recalled by CR. APM shall identify the status of the accounts at the time APM transferred them to CR (i.e., in dispute, settled, cease and desist, attorney represented, etc.) and the balance still owed, if any.
>
> F. Correspondence and Documents. APM must return to CR all correspondence and documents, including dispute letters, cease and desist letters from any of the accounts receivable referenced in the Contracts dated August 24, 2006, September 15, 2006 and January 19, 2007. In addition, APM must send to CR within seven (7) days of their receipt, any correspondence or documents regarding these accounts received at any point in the future.

(7/30/08 Settlement Agreement at ¶¶ C, D, E and F (emphasis in original)).

Crescent argues that while APM provided an accounting of the receivables it collected on Crescent's behalf, APM has not paid Crescent any of the money it collected, despite being

obligated to do so under ¶ D of the Settlement Agreement. In this regard, Crescent asserts that APM's accounting shows that APM collected a total of $34,889.28 on Crescent's New Jersey and Pennsylvania accounts and, that pursuant to the Settlement Agreement, APM should be required to immediately pay that sum of money to Crescent. Further, Crescent argues that despite APM's claim that it is owed a fee for making the aforementioned collections, no such fee is owed because according to the terms of ¶ C of the Settlement Agreement, APM relinquished both its interest in the accounts, along with any outstanding payments, and agreed that the pertinent contracts were "terminated with no further obligations owed by the Parties to each other, except for the obligations set forth in this Agreement." In addition, Crescent contends that it is clear that APM is not entitled to a fee because ¶ D of the Settlement Agreement requires APM to immediately turn over all payments collected by APM without any reference to a provision permitting APM to withhold any money as a fee. Moreover, Crescent claims that even if APM were entitled to the fee it claims, APM would nevertheless be required to turn over the balance of the money collected. Thus, while Crescent adamantly objects to APM's claim to a fee, Crescent argues that at a minimum there is no justification for APM's refusal to pay Crescent $21,472.91, a figure representing the total money collected less APM's supposed fee.

Further, Crescent claims that APM has not provided it with the status report called for in ¶ E of the Settlement Agreement. Crescent argues that it is critical for it to receive a thorough report regarding the status of each account because without knowing the status of each account, "Crescent could be exposed to substantial liability under the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Bankruptcy law and other consumer protection statutes by collecting accounts that could be closed, could be subject to a cease and desist, could be handled by an

attorney and thus precluding direct contact with the debtor, or could be in the process of payment by the debtor." (Crescent Br. at 5). Crescent alleges that while it received thousands of pages of account notes from APM, the status of each account is not located therein. Further, Crescent claims that even if the account notes contained the status of each account, they would not be sufficient because the Settlement Agreement required the status of each account to be provided in a separate file and because it would be "impractical for Crescent to comb through notes of tens of thousands of accounts in order to find the proverbial needle in a haystack." (*Id.*)

Finally, Crescent claims that APM has failed to comply with ¶ F of the Settlement Agreement. In this regard, Crescent argues that it is "undisputed that APM has not turned over a single document received by APM during the period it was servicing the accounts." (Crescent Br. at 5). Crescent argues that it is "inconceivable" that APM, in servicing thousands of Crescent's accounts, received not "a single piece of correspondence from a debtor and/or his or her counsel." (*Id.*) As a result, Crescent contends that APM should be ordered to immediately provide Crescent with the documents required by ¶ F of the Settlement Agreement.

APM opposes Crescent's motion, arguing that Crescent's motion is untimely and that APM has complied with the parties' Settlement Agreement. With respect to the timeliness of Crescent's motion, APM, in a footnote, points out that pursuant to the District Court's Order of Dismissal, Crescent had 60 days within which to move if the settlement had not been consummated. APM argues that despite that deadline, Crescent did not file the instant motion until 82 days had elapsed. As a result, APM claims that the Court lacks subject matter jurisdiction to hear Crescent's untimely motion.

In light of APM's argument that the Court lacks jurisdiction to hear Crescent's motion, the Court requested supplemental briefing from the parties on this issue. Crescent responded by arguing that the Court maintains jurisdiction under Rule 60(b), which permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for several reasons including "fraud . . ., misrepresentation, or misconduct by an opposing party" (FED.R.CIV.P. 60(b)(3)), and for "any other reason that justifies relief." FED.R.CIV.P. 60(b)(6). Crescent claims that APM's "conduct in patently refusing to adhere to the terms of an agreement it entered into, including not paying monies it acknowledges in its opposition papers it owes, constitutes the misrepresentation and misconduct identified in Rule 60." (Crescent Supp. Br. at 3). Crescent also argues that "it would be a waste of the parties' resources as well as judicial resources to require the initiation of a second lawsuit rather than simply having the Court directly resolve the dispute before it." (*Id.*)

In contrast, APM continues to maintain that the Court lacks jurisdiction to hear Crescent's motion. APM argues that Crescent's attempt "to salvage its time-barred motion to enforce by recasting it under Fed.R.Civ.P. 60(b) . . . lacks merit." (APM Supp. Br. at 3). Specifically, APM argues that Crescent "offers no evidence of fraud, misrepresentation or misconduct by APM, and merely suggests that APM's decision not to pay a portion of the accounts receivable while this matter remains a subject of a contractual dispute is somehow characterized as 'misconduct.'" (*Id.* at 3-4). Further, APM argues that Crescent has not set forth any extraordinary circumstance that would make it appropriate for the Court to proceed under Rule 60(b)(6). APM also takes issue with Crescent's suggestion that the Court can hear the

instant motion for the sake of efficiency. Indeed, "APM contests the notion that convenience in the absence of jurisdiction is an appropriate basis for allowing this motion to proceed." (*Id*. at 4).

In addition, APM addresses the substance of Crescent's motion, arguing that it has complied with the terms of the parties' settlement. In this regard, APM argues that nothing in the Settlement Agreement required it to "surrender commissions and interest incurred prior to the date of the settlement." (APM Opp Br. at 2). Thus, APM argues that under the Settlement Agreement, Crescent is not entitled to all of the money that APM has collected on the accounts at issue -- $34,889.28 -- but, instead, is only entitled to $19,494.96. APM states that it provided Crescent with a spreadsheet detailing how it arrived at this figure and requesting Crescent's approval of same. APM claims that Crescent never provided a response to APM's inquiry regarding whether payment of $19,494.96 would resolve the parties' dispute on this issue. Despite not having heard from Crescent, APM stated that it would pay Crescent $19,494.96 (what APM believes is its total obligation) on or before December 15, 2008; though as of September 17, 2009, no such payment had been made.

In addition, APM argues that the account histories it furnished to Crescent provide the status of each account (i.e., "whether it is settled, disputes [sic], whether the debtor has requested a cease and desist of collection efforts and whether the debtor is represented by counsel") as well as the balance on each account. (APM Opp. Br. at 3). Consequently, APM claims that it has satisfied ¶ E of the Settlement Agreement.

Further, with respect to Crescent's suggestion that APM has violated the Settlement Agreement because the account histories are insufficient, APM states that it is "bemused by the fact that Plaintiff seeks to place additional burden [sic] on APM based on Plaintiff's

incompetence in assessing account histories." (*Id*. at 3). APM argues that in the collection industry, a standard format for account histories, known as comma delimited, has developed. APM claims that "[t]his standard allows the stream-lined downloading of account information from one debt collector to another." (*Id*.) APM claims that after being informed by Crescent on several occasions that Crescent was unable to access the provided account histories, APM, at its expense, contacted the software company that operates the collection platform (WinDebt) and had that entity download the account histories to a readable non-WinDebt format. APM states that it then provided "a CD containing the account histories in industry-standard comma-delimited text files, that could be viewed in Notepad, WordPad, Excel and scalc." (*Id*. at 3-4). APM contends that Crescent's argument that "the information produced by APM is incomplete, inaccurate and unreadable is simply a reflection of Plaintiff's lack of knowledge concerning standard collection practices and systems." (*Id*. at 4). APM claims that it is "unable to educate Plaintiff on industry standards and cannot provide data in typical WinDebt XL format unless Plaintiff has access to the WinDebt platform." (*Id*.) APM argues that Crescent's issues stem not from APM's conduct but from Crescent's "inability to adapt to the industry standard regarding the conversion of account data." (*Id*.) APM notes that in the past it had offered Crescent access to its IT personnel in order to assist Crescent in the processing of the account information, but each such offer was rejected. APM claims that Crescent is seeking to burden it with the "impossible task" of providing "account histories to Plaintiff in a converted format, without any idea as to the platform that Plaintiff is using to review the account histories." (*Id*. at 5). APM argues that it has already fulfilled its obligation under the express terms of the Settlement Agreement and that no more should be required of it.

## II. Analysis

A settlement agreement is a type of contract. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)). Consequently, courts look to state contract law when determining whether an enforceable settlement agreement has been reached. *See Id*.

In New Jersey, there is a strong public policy favoring settlements. *Nolan v. Lee Ho.*, 120 N.J. 465, 472 (1990). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985). While courts will not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms[,]'" (*Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955))) "a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id*. (internal quotation marks and citation omitted). Further, provisions that "pertain to the fair implementation of [a] settlement . . . are not the essentials of the settlement." *Id*. 231 N.J. Super. at 149.

### A. Jurisdiction

Before the Court can address the merits of Crescent's underlying motion, it must first determine whether it has jurisdiction to hear same. The Supreme Court has held that enforcement of a settlement agreement, whether through an award of damages or a decree of

specific performance "is more than just a continuation or renewal of the dismissed suit and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). According to the second paragraph of the Order of Dismissal entered in this matter, the Court retained jurisdiction to enforce the terms and conditions of the settlement entered into between Crescent and APM under only the following two limited circumstances: (1) if a party moved to set aside the Order of Dismissal in accordance with the first paragraph of the Court's Order (i.e. "upon motion and good cause shown within 60 days" of the entry of the Order); or (2) if a party moved to set aside the Court's Order of Dismissal "pursuant to the provisions of Fed.R.Civ.P. 60 (b)[.]" (8/14/08 Order of Dismissal (emphasis in original)).

Here, Crescent did not move within the 60 days provided by ¶ 1 of the District Court's Order of Dismissal. Instead, 81 days elapsed before the instant motion to compel adherence to the settlement agreement was filed. When asked why, after it became apparent that the settlement would not be consummated within 60 days, Crescent neither sought the Court's intervention prior to the elapse of the 60-day period nor sought an extension of same, Crescent responded that it did not move within sixty days because it did not want to have the matter reopened with the parties put "back in a place they were before the settlement agreement occurred[.]" (9/17/09 Tr. at 5:16-17). Indeed, Crescent explained that its "interpretation of the 60-day period" was that it "is a remedy for reopening the case and creating a case in which . . . the settlement is off the table, and nobody's prejudiced, go back to where you were when the case was settled . . . . It's not to go back and say someone didn't comply with the terms of the settlement, but rather put yourselves back in a position and continue the litigation." (*Id*. at 8:15-

25). Crescent also argued that the instant motion was "not an effort to continue the litigation to go back and seek the damages [it] believed [it] would have been entitled to had [it] . . . gone back to the party and reopened and start[ed] discovery and move[d] . . . towards a trial. [Instead] [t]his [wa]s merely an attempt to enforce the terms of a settlement which [Crescent] d[id]n't think [wa]s constrained by that 60-day window." (*Id*. at 9:3-9). In this regard, Crescent acknowledged that "procedurally [it] could have sent a letter to say we need more time because everything hasn't been done[;]" however, Crescent also argued that it did not believe "that the failure to do that is impacted by the Court's 60-day order because . . . in the second paragraph it specifically contemplates that the Court retains jurisdiction in this matter to the extent necessary to enforce the terms of the settlement[.]" (*Id*. at 6:3-10).

With respect to the second paragraph of the District Court's Order of Dismissal, Crescent argued that that paragraph envisions a separate period of time (from the sixty days provided in the first paragraph) in which a party could seek to have the settlement enforced. Indeed, Crescent noted that the second paragraph of the Dismissal Order refers to Rule 60, which provides for "equitable grounds" of relief. (*Id*. at 11:6). As such, Crescent argued that according to the second paragraph of the Dismissal Order "the Court does retain jurisdiction of the matter to the extent necessary to enforce the terms and conditions of the settlement within the confines recognized under Federal Rule of Civil Procedure 60 which is equitable in its application and is not strictly to be adhered to." (*Id*. at 11:16-20). Further, Crescent argued that "the most efficient means" of resolving the parties' dispute would be to have this Court decide Crescent's motion instead of forcing Crescent to file a new breach of contract action (*Id*. at 10:3), and, given Rule 60's equitable nature, coupled with the fact that Crescent sought this Court's intervention a mere

twenty-one days after the 60-day period expired, "this is the perfect situation" to justify relief from the Dismissal Order. (*Id*. at 12:1-2).

As an initial matter, the Court notes that while it may be more efficient for the parties if this Court were to decide Crescent's motion, the Court also notes that that fact alone plainly does not confer jurisdiction on the Court to do so. As previously stated, because motions concerning enforcement of settlement agreements represent "more than just a continuation or renewal of the dismissed suit[,]" a court must specifically retain jurisdiction over the enforcement proceedings; mere judicial and/or economic efficiency will not suffice. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. at 378. As also noted, in this matter the Court retained jurisdiction to enforce the terms and conditions of Crescent and APM's Settlement Agreement under only two limited circumstances. The first of those circumstances, "upon motion and good cause shown within 60 days[,]" clearly does not apply as the instant motion was filed 81 days after the Dismissal Order was entered. (8/14/08 Order of Dismissal). Thus, in order for the Court to retain jurisdiction to decide Crescent's motion, Rule 60(b) would have to justify relief.[1]

While Crescent's motion was not initially stylized as such, in both its supplemental briefing and during oral argument Crescent argued that its motion to compel adherence to the Settlement Agreement was brought pursuant to Rule 60(b) and therefore the Court has jurisdiction to decide same. Rule 60(b) permits the Court "[o]n motion and just terms" to

[1]The Court notes that had a request to extend the "60 day" Order of Dismissal been made, the Court would have entertained same. Indeed, as noted on the record during the September 17, 2009 hearing, the Court frequently grants such requests where the parties inform the Court of their need for additional time to finalize either the settlement documents or the settlement itself. (*See* 9/17/09 Tr. at 6:24-25 to 7:1-8)

> relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FED.R.CIV.P. 60(b). Crescent argues that relief is appropriate under Rule 60(b)(3) and (6); however, for the reasons outlined below, the Court disagrees.

With respect to Crescent's Rule 60(b)(3) argument, the Court notes that, without citing any legal authority, Crescent states that APM's "conduct in patently refusing to adhere to the terms of an agreement it entered into, including not paying monies it acknowledges in its opposition papers it owes, constitutes the misrepresentation and misconduct identified in Rule 60." (Crescent Supp. Br. at 3). The Court finds this conclusory and wholly unsupported statement to be insufficient. Here Crescent and APM disagree over how certain terms of their Settlement Agreement should be construed. The Court finds the parties' dispute to be a legitimate, nonfrivolous disagreement. As such, the Court cannot find that APM's refusal to concede to Crescent's demands constitutes fraud, misrepresentation or misconduct.

Further, the Court finds Crescent's reliance on Rule 60(b)(6) to be likewise misplaced. In its supplemental briefing, Crescent cites to Rule 60(b)(6) without including any specific analysis regarding why it should be entitled to relief under this subsection. In addition, during oral

argument, Crescent simply noted that Rule 60 was equitable in nature and argued that as such the Court should exercise its discretion to grant it relief from the Dismissal Order.

Relief under Rule 60(b)(6), is "available only in cases evidencing extraordinary circumstances[.]" *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975) (citing *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Further, "a motion under Rule 60(b)(6) 'must be fully substantiated by adequate proof and its exceptional character must be clearly established.'" *Howard Johnson Int'l v. Cupola Enterprises, LLC*, No. Civ. A. 01-1205 (DMC), 2006 WL 625210, *1 (D.N.J. March 10, 2006) (quoting *Federal Deposit Ins. Corp. v. Alker*, 234 F.2d 113, 116 (3d Cir. 1956). In addition, relief under Rule 60(b)(6) is only available "when the relief sought is based upon 'any other reason' than a reason which would warrant relief under 60(b)(1-5)." *Stradley*, 518 F.2d at 493.

The Court finds that Crescent has failed to establish the "extraordinary circumstances" needed to justify relief under Rule 60(b)(6). *Stradley*, 518 F.2d at 493. Indeed, the Court finds nothing exceptional about the circumstances presented here. Further, to the extent that Crescent argues that efficiency interests warrant relief under Rule 60(b)(6), the Court finds that the mere efficiency of this Court addressing the substance of Crescent's motion to compel adherence to the Settlement Agreement does not qualify as an "extraordinary circumstance" justifying relief. If it did, then the Supreme Court's holding in *Kokkonen* that enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit and hence requires its own basis for jurisdiction" would be rendered nearly meaningless because it would almost always be more efficient for the court overseeing the parties' settlement to be the court to determine whether and how the settlement should be enforced. 511 U.S. at 378. As a result, if efficiency

qualified as an "extraordinary circumstance[,]" then all dismissal orders that did not retain jurisdiction to enforce a settlement agreement under all circumstances would be subject to revision under Rule 60(b)(6).

**B. Enforcement of the Settlement Agreement**

Because the Court finds that it lacks jurisdiction to decide Crescent's motion to compel adherence to the Settlement Agreement, the Court does not reach the substance of same.

**III. Conclusion**

For the reasons set forth above, the Court recommends that Crescent's motion to compel adherence to the Settlement Agreement be DENIED.

IT IS therefore on this 16th day of October, 2009,

RECOMMENDED that Crescent's motion to compel adherence to the Settlement Agreement [Docket Entry No. 31] be DENIED; and it is further

ORDERED that pursuant to L.CIV. R. 72.1(c)(2) and FED. R. CIV. P. 72(b), within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Respectfully submitted,

s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**